**NATURAL RESOURCES COMMISSION,
Appellant–Respondent,**

v.

**SUGAR CREEK MOBILE ESTATES, W.
Nathan Pickett & Roscoe C. Moore,
Appellees–Petitioners.**

No. 54A01–9408–CV–260.

Court of Appeals of Indiana,
First District.

Jan. 26, 1995.

Rehearing Denied April 27, 1995.

Pamela Carter, Atty. Gen. of Indiana and Anita Kimmell, Deputy Atty. Gen., Indianapolis, for appellant.

James E. Ayers and Jeffery A. Boggess, Wernle, Ristine & Ayers, Crawfordsville, for appellees.

## OPINION

BAKER, Judge.

Appellant-respondent Natural Resources Commission [1] (NRC) brings this appeal from the judgment of the Montgomery Circuit Court which reversed an order of the NRC denying appellees-petitioners, Sugar Creek Mobile Estates, W. Nathan Pickett and Roscoe C. Moore (collectively Estates), after-the-fact permit to build an unformed concrete levee in the floodway along the bank of Sugar Creek.

### FACTS

Pickett and Moore were joint owners of the Sugar Creek Mobile Estates trailer park situated on the bank of Sugar Creek, in Montgomery County, Indiana. In the Spring of 1987, Moore, who was concerned about the erosion of the Sugar Creek bank that abutted

1. The NRC is a subdivision of the Indiana Department of Natural Resources (DNR) and is the ultimate authority with respect to decisions by the DNR regarding floodway construction permits.

his property, contacted a ready-mix cement company who agreed to dump their cement tailings on that bank. Although Moore contacted the local conservation officer for the Indiana Department of Natural Resources (DNR) before dumping began and told the officer of his plans, that officer did not discuss with Moore whether he needed to obtain a permit to construct such a levee.

In January 1988 the DNR's Division of Water (Division) received several complaints regarding the levee. At that time, the levee was approximately 10 feet high, 15 feet wide and extended between 200 to 300 feet along the shore. On March 10, after conducting an inspection, the Division notified Moore that he was in violation of IND. CODE § 13–2–22–13, which requires the NRC's prior approval before any construction, excavation or filing may occur in a floodway. Thereafter, on April 25, Moore filed a Floodway Construction Permit Application with the Division for approval of the levee as constructed. Moore's application, which was then submitted to the Advisory Council on Water and Mineral Resources (Council) at its February 1989 meeting, was recommended for approval subject to nine conditions. Thereafter, Pickett [2] asked the NRC to review two of the permit conditions [3]. On April 27, 1989, the NRC, after conducting a review, denied the permit in all respects.

In May 1989 Estates filed a timely request for administrative review of the NRC's decision denying its permit, and on March 20, 1991, filed its motion for summary judgment alleging that all of the requirements of I.C. § 13–2–22–13(d)(2) governing construction in a floodway had been met.[4] On September 23, 1991, the administrative law judge (ALJ) of the NRC granted partial summary judgment in favor of Estates holding that although the levee does not have an adverse impact on the floodway, and does not constitute an unreasonable hazard to the safety of life or property, an issue of material fact remained as to whether the levee has an adverse impact on fish, wildlife, and botanical resources. At the February 25, 1992, hearing on that issue, the ALJ reversed the NRC's denial and affirmed the Council's recommendation to issue the permit subject to various conditions. On October 27, upon final review of the ALJ's decision, the NRC reversed and denied the permit finding that the levee impacts fish, wildlife, and botanical resources in an adverse manner, and ordered the removal of the levee within sixty days and the revegetation of the affected area.

On November 25, 1992, Estates filed a petition for judicial review with the Montgomery Circuit Court, and on November 24, 1993, moved for summary judgment. Upon review, the trial court, in its April 14, 1994, order granted Estates motion for summary judgment and set aside the final order of the NRC holding that the NRC's decision was not supported by substantial evidence and was arbitrary, capricious and an abuse of discretion. The trial court further held that the NRC exceeded its authority in ordering that the levee be removed and the area be revegetated. Thus, it remanded the case back to the NRC for further proceedings.

### DISCUSSION AND DECISION

 A court reviewing an administrative decision is limited to determining whether

---

**2.** Ownership of the Sugar Creek Mobile Estates property was transferred from Moore to Pickett, then back to Moore again between August 1988 and April 1989.

**3.** Pickett requested reconsideration of the following conditions:
(4) the creek side face of the concrete levee to be armored with sandstone rip-rap to a depth of 12–18 inches according to Department of Highway revetment specification 616. Sandstone material is specified to blend in with the naturally occurring rock outcrops along Sugar Creek,
(5) the sandstone rip-rap used be of large enough size, and extend below the water line

to provide habitat for aquatic organisms in the spaces.

**4.** I.C. § 13–2–22–13(d)(2), in relevant part, provides:
... The director shall issue a permit only if in the opinion of the director the applicant has clearly proven that the structure, obstruction, deposit, or excavation will not adversely affect the efficiency of, or unduly restrict the capacity of, the floodway, will not constitute an unreasonable hazard to the safety of life or property, and will not result in unreasonably detrimental effects upon fish, wildlife, or botanical resources....

the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principles. *Indiana Dep't of Natural Resources v. United Refuse Co.* (1993), Ind., 615 N.E.2d 100, 103. The trial court proceeding is not intended to be a trial de novo, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Id.* Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. *Peabody Coal Co. v. Indiana Dep't of Natural Resources* (1994), Ind.App., 629 N.E.2d 925, 928. However, we need not accord the same degree of deference to an agency's conclusions on a question of law. *Id.*

First, the NRC contends that the trial court erred in determining that its decision was not supported by substantial evidence.[5] We may vacate the NRC's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the board are clearly erroneous. *City of Indianapolis v. Hargis* (1992), Ind., 588 N.E.2d 496, 498. Such a standard requires great deference toward the administrative board by the reviewing court when the petition challenges findings of fact or the application of the facts to the law. *Town of Beverly Shores v. Bagnall* (1992), Ind., 590 N.E.2d 1059, 1061. Thus, we must determine whether the NRC's finding, that the levee impacts fish, wildlife, and botanical resources in an adverse manner, is clearly erroneous.[6]

In the case at bar, Keith Poole, an environmental biologist for the Division, evaluated the levee's impact on the fish, wildlife, and botanical resources. From that evaluation, Poole concluded that the fish, wildlife, and botanical resources had already been adversely affected by the levee, and surmised that those adverse environmental effects would continue as long as the levee remained in place. Record at 226, 228. At the administrative hearing, Poole testified that the levee has basically eradicated the wildlife habitat, including the basic food, cover, and diversity and replaced it with an unformed concrete wall. R. at 228. Poole further testified that when he visited the site on November 19, 1991, he did not see any evidence of wildlife on or around the concrete structure, although he stated that normally he would expect to see deer, raccoon, beaver, possum, skunks, rafters, song birds, and kingfishers in that area. R. at 235, 238. Poole opined that the levee would have a continuing adverse impact because it supplanted the fish and wildlife habitat. R. at 238. Recognizing our deferential standard of review, we find that the NRC's decision, that the levee impacts fish, wildlife, and botanical resources in an adverse manner, was supported by substantial evidence and thus, is not clearly erroneous.[7] The permit was properly denied.

Next, the NRC contends that the trial court erred in finding that its decision was based on aesthetic considerations, and thus, was arbitrary, capricious and an abuse of discretion. An action of an administrative agency is arbitrary and capricious only where there is no reasonable basis for the action. *State Bd. of Registration for Land Surveyors*

---

5. We note that the NRC contends that the trial court did not apply the correct standard of review in considering the decision of the NRC, but instead reweighed the evidence that was contained in the administrative record. Because we apply the same standard of review imposed on the trial court and do not defer to the trial court's findings of fact, we need not address this issue further. *See Scott County School District 2 v. Dietrich* (1986), Ind.App., 499 N.E.2d 1170, 1172.

6. The parties do not dispute that the levee does not have an adverse impact on the floodway and does not constitute an unreasonable hazard to the safety of life and property.

7. Although the trial court contends that the NRC was required to find an "unreasonably detrimental" impact, pursuant to I.C. § 13–2–22–13, instead of merely an "adverse impact", the record contains substantial evidence to support a finding that the levee has an unreasonably detrimental impact upon the fish, wildlife, and botanical resources.

*v. Bender* (1993), Ind.App., 626 N.E.2d 491, 496. As we have found substantial evidence in the record to sustain the NRC's decision, it cannot be arbitrary and capricious. The decision was not unreasonably based on aesthetic considerations but was grounded upon Poole's testimony of the effect on the wildlife. We reverse the trial court's judgment on the issue of the permit and affirm the NRC's denial of the permit.

Lastly, the NRC argues that the issue of whether it exceeded its authority in ordering that the levee be removed and the area be revegetated was not properly before the trial court. The NRC is mistaken. The Estates' motion for summary judgment for review of the NRC's action requested review of both the denial of the permit and of the order of removal and revegetation. Thus, contrary to the NRC's assertions, the issue was properly before the trial court. Therefore, we consider the merits of the issue—whether the NRC exceeded its authority.

■ Inherent in I.C. § 13–2–22–13 is the presumption that a party will obtain a permit from the NRC before beginning construction in a floodway. However, in situations such as this, where a party fails to obtain a permit before building, and the party's after-the-fact permit is denied, the issue becomes what to do with the illegal structure. One remedy is condemnation. IND. CODE § 13–2–22–13(g), in pertinent part, provides:

> The director may remove or eliminate any structure, obstruction, deposit, or excavation in any floodway which:
>
> . . . . .
>
> (3) is unreasonably detrimental to fish, wildlife, or botanical resources ...
>
> by an action in condemnation, and in assessing the damages in such proceedings, the appraisers and the court shall take into consideration whether the structure, obstruction, deposit, or excavation is lawfully in or on the floodway.

However, this section only applies to any structure, obstruction, deposit, or excavation in any floodway that was in existence at the time I.C. § 13–2–22–13 was enacted. *Foreman v. State ex rel. Dep't of Natural Resources* (1979), 180 Ind.App. 94, 99, 387

N.E.2d 455, 460. To interpret it otherwise would allow Estates to construct and maintain this illegal levee and in turn benefit from its wrongdoing by forcing the NRC to file an action in condemnation and ultimately pay for the levee's removal. Thus, because Estates levee was not constructed in the floodway until after the passage of I.C. § 13–2–22–13, I.C. § 13–2–22–13(g), requiring condemnation, does not apply.

■ An alternative remedy to condemnation is I.C. § 13–2–22–13(c) which, in pertinent part, provides:

> The director may commence, maintain, and prosecute any appropriate action to enjoin or abate a nuisance ... which adversely affects flood control or the safety of life or property, or is unreasonably detrimental to fish, wildlife, or botanical resources.

This section gives the director the general power to seek injunctive relief. Implied in this provision is that the NRC can order the removal of an illegal structure. If its order is ignored, the director may then use its power under 13(c) to enforce its order through a court injunction. Thus, we hold that the NRC did not exceed its authority by ordering the removal of the offending structure and the revegetation of the affected area. Therefore, we reverse the trial court's setting aside of the NRC's order of removal and revegetation.

### CONCLUSION

In conclusion, we hold that the NRC's finding, that the levee impacts fish, wildlife, and botanical resources in an adverse manner, was supported by substantial evidence and thus, is not clearly erroneous, arbitrary or capricious. Also, we find that the NRC did not exceed its authority in ordering that the levee be removed and the area be revegetated.

Judgment reversed.

SHARPNACK, C.J., and RUCKER, J. concur.