**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and State Farm Fire & Casualty Company, Appellants,**

v.

**John F. MORTELL, Commissioner of the Indiana Department of Insurance, and the Indiana Department of Insurance,**

**and**

**Indiana State Chiropractic Association, Appellees.**

**No. 49A04–9501–CV–3.**

Court of Appeals of Indiana.

June 19, 1996.

Rehearing Denied Aug. 15, 1996.

Rhonda L. Fuller, Todd A. Richardson, Lewis & Kappes, Indianapolis, Michael E. Brown, John B. Drummy, Kightlinger & Gray, Indianapolis, John T. Bernstein, Bloomington, Illinois, for appellants.

Pamela Carter, Attorney General, Terry G. Duga, Deputy Attorney General, Indianapolis, Terry P. Pehler, John W. Tousley, Caplin Pehler Park & Tousley, Indianapolis, for appellees.

John C. Trimble, Mary J. Hoeller, Lewis & Wagner, Indianapolis, for amicus curiae.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company ("State Farm") appeal from the judgment of the trial court which affirmed the Final Order issued

by Appellees–Defendants the Indiana Department of Insurance ("IDI"). The Final Order was the result of a market conduct examination of State Farm which compared State Farm's handling of claims for treatment by chiropractic physicians with its handling of claims for treatment by other medical providers. Appellee, the Indiana State Chiropractic Association ("ISCA") was an intervenor below. The Insurance Institute of Indiana filed a brief as *amicus curiae* asking this court to reverse the trial court's decision and to find in favor of State Farm.

We affirm.

## ISSUES

The following restated and consolidated issues are presented for our review:

1. Whether IDI acted properly when it conducted an investigatory hearing to review the findings of the market conduct examination and ordered State Farm to take specific actions, and whether this procedure deprived State Farm of its due process rights.

2. Whether IDI properly applied the Indiana statute governing the reimbursement for medical services to State Farm's automobile and homeowner insurance policies and whether IDI properly applied the term "equal basis" within the meaning of the statute.

3. Whether IDI's Final Order is supported by substantial evidence.

## FACTS AND PROCEDURAL HISTORY

The conflict at issue began in 1991, when Edward Treacy, the Executive Director of ISCA wrote a letter to then IDI Commissioner, John Dillon, lodging a formal complaint against State Farm and requesting that IDI perform a market conduct examination of State Farm, with specific emphasis on the company's use of outside claims review organizations. Specifically, ISCA alleged that State Farm was discriminating against chiropractors in the payment of claims. After receiving this letter, IDI decided to perform a target market conduct examination and retained the independent firm of Milliman & Robertson to conduct the examination. Milliman & Robertson is a group of actuaries and health care consultants in the business of providing a wide variety of services including actuarial services to life, health, pension and casualty insurance organizations.

A market conduct examination is a statutorily provided tool by which the insurance commissioner can review a particular aspect of the interaction between an insurance carrier and the general public. A target examination is limited to a specific issue which the market behavior of the company has precipitated, and is usually conducted on an immediate basis and sometimes with no notice to the company.

In this case, IDI provided State Farm with notice of its intent to conduct the examination. After several obstacles were overcome [1], the examination began on June 17, 1991, approximately 20 days after State Farm received notice of IDI's intent to conduct the examination. The examination took place over a one week period and was conducted at the regional offices of State Farm in Lafayette, Indiana. The examiners used a random selective sample of files of State Farm's choice to review the company's practices with regard to the reimbursement of chiropractic claims. The team of examiners from Milliman & Robertson generated a report of its findings and forwarded it to IDI, along with a Recommended Order.

Upon receipt of the report, IDI sent a copy to State Farm and advised State Farm that it had 15 days in which to file any objections. State Farm responded in writing that it objected to the wording suggesting that State Farm's Medical Cost Management program was not in compliance with Indiana insurance law.

---

1. Initially, IDI sought to conduct its examination at the offices of Professional Evaluation Services, Inc. (PES), an outside agency that routinely reviewed State Farm files. However, PES refused to allow the investigation at its place of business and threatened injunctive legal action. State Farm did not intervene to assist IDI or Milliman & Robertson in obtaining PES's cooperation. Thus, the examination team did not have access to the State Farm files located at the offices of PES.

Milliman & Robertson reached the following conclusions based on its examination of State Farm's claims payment practices:

— State Farm uses outside review organizations to review chiropractic claims much more frequently than for other practitioners performing like services.

— For auto and fire claims involving medical services, State Farm has no uniform practices or policy stating when medical claims should be reviewed externally.

— We found no pattern indicating when State Farm claims examiners would use outside review agencies for chiropractic claims (such as Professional Evaluation Services, Inc. (PES)).

— Claims analysts use their own judgment (often in consultation with their supervisor or the claims superintendent) as to when they use outside review organizations for further medical claims review.

— State Farm needs to establish documented utilization review criteria to decide when claims need further review, both for chiropractic as well as medical services, for the auto and fire claims processing.

— We found no evidence of any written criteria or "red flag" policy which required State Farm claim examiners to use outside review.

(R. 10–11).

After reviewing the market conduct examination, John F. Mortell, the newly appointed Commissioner of IDI, issued the Department's findings of fact, conclusions of law and order regarding State Farm's claims practices. The Commissioner formally adopted the market conduct examination report prepared by Milliman & Robertson and found in relevant part that State Farm treats claims involving chiropractic services differently than claims involving other health care providers, and that State Farm does not reimburse chiropractors for their services on an equal basis with other health care providers who perform the same service. IDI further ordered State Farm to establish written guidelines for its handling of chiropractic claims and for the organization and maintenance of automobile and fire claims files. One month after its issuance, IDI rescinded this order for the purpose of granting State Farm an opportunity for a formal hearing.

IDI then promptly notified State Farm that a hearing pursuant to Ind.Code 4–21.5–1–1 et seq. was scheduled for December 17, 1991, with Commissioner Mortell presiding. State Farm filed a motion seeking Commissioner Mortell's recusal as Administrative Law Judge (ALJ) due to his alleged biased position, a request for a more definite statement of the charges and a request for a pre-hearing conference. A pre-hearing conference was held with Commissioner Mortell sitting as ALJ, wherein he denied all of State Farm's requests, including the request to disqualify himself. Following the pre-hearing conference, State Farm brought an action in the Marion Circuit Court seeking judicial review of Commissioner Mortell's denial of State Farm's petition to disqualify. That same day, prior to the issuance of any judicial ruling, Commissioner Mortell withdrew as ALJ and appointed Lawrence Reuben to preside as ALJ over all proceedings including "the hearing, which proceedings and hearing shall be held in accordance with Ind. Code § 27–1–3.1–1 et seq." (R. 183). Thereafter, the appointment of Lawrence Reuben was withdrawn, and John Bushemi was appointed to serve as ALJ. Mr. Bushemi then notified State Farm that an investigatory hearing would be held. It was stated in this order that "[t]he hearing will be conducted pursuant to Ind.Code 27–1–3.1–12 and 27–1–3.1–13 as a nonadversarial confidential investigatory proceeding as necessary for the resolution of any inconsistencies, discrepancies, or disputed issues apparent upon the face of the filed examination report ..." (R. 198). It was also indicated in the record that the hearing officer would question those persons subpoenaed and conduct cross examination exclusively, and that the parties would have an opportunity to present evidence.

Mr. Bushemi presided over two days of investigatory hearings, beginning on September 11, 1992. He issued his Recommended Final Order on January 17, 1994. On February 7, 1994, IDI issued its Final Order which adopted Mr. Bushemi's Findings of Fact and

Conclusions of Law, with modifications. In its Final Order, IDI concluded that State Farm had violated certain provisions of Indiana insurance law and issued the following order:

1. The Market Conduct Examination Report dated August 6, 1991 submitted by Milliman & Robertson, Inc. is hereby adopted as modified by the written submissions and rebuttals and other portions of the investigatory hearing record.

2. State Farm is hereby ordered to immediately reimburse chiropractors for services under any insurance contract on an equal basis with physicians and other health care providers in compliance with Indiana Code § 27–8–6–1.

3. State Farm is hereby ordered to establish and use written guidelines, approved by the Department of Insurance, for the review of claims involving services performed by chiropractors, which guidelines shall include objective criteria specifying circumstances under which a claim should be challenged by a claims analyst or sent to a higher level of review including a supervisor or outside consultant. Such guidelines shall be submitted to the Department for review and approval by April 30, 1994.

4. State Farm is hereby ordered to develop and conduct a training seminar for all claims personnel in the State of Indiana by June 30, 1994, which seminar shall include instruction on current chiropractic methodology and treatment. The written guidelines established by State Farm and approved by the Department of Insurance pursuant to this order shall be reviewed by all claims personnel as part of the seminar. The agenda and all tangible materials used or referred to in conducting the seminar and distributed at the seminar shall be submitted to the Department of Insurance for approval at least sixty (60) days prior to conducting the seminar and shall be approved by the Department of Insurance prior to use or distribution.

5. State Farm is hereby ordered to immediately refrain from publishing to or making available for review by claims personnel inaccurate and outdated information concerning the care and treatment provided by chiropractic physicians, including but not limited to, videotape # 30A/V14535.

6. State Farm shall immediately pay the outstanding statement of the examiners for fees and expenses incurred in connection with conducting this examination and this proceeding.

7. The examination report shall remain confidential for thirty (30) days after the issuance of this Order, through and including March 9, 1994, except as provided by law. The Findings of Fact, Conclusions of Law and Recommended Order filed by the hearing officer and this Order, because they contain portions of the examination report, shall also remain confidential through and including March 9, 1994, except as provided by law.

(R. 1213–1215). State Farm filed its petition for judicial review pursuant to Ind.Code 4–21.5–5–1 *et seq.* on February 18, 1994. Although no evidence was presented to the trial court, all parties submitted briefs and proposed findings and the trial court entered judgment in favor of IDI and against State Farm on September 19, 1994. State Farm appeals.

## STANDARD OF REVIEW

The burden of demonstrating the invalidity of agency action is on the party asserting invalidity. Ind.Code 4–21.5–5–14(a) (1993). Relief from an administrative agency decision is warranted only if the party seeking judicial review has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Ind.Code 4–21.5–5–14(d)(1)–(5); *Charles A. Beard Classroom Teachers Ass'n v. Board of School Trustees of Charles A. Beard Memorial School Corp.,* 646 N.E.2d 988, 990–991 (Ind.Ct.App.1995) (citing *Natural Resources Com'n v. AMAX Coal Co.,* 638 N.E.2d 418, 423 (Ind.1994), *reh'g denied.*).

A court reviewing an administrative decision is limited to analyzing the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Natural Resources Com'n v. Sugar Creek Mobile Estates,* 646 N.E.2d 61, 64 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* In other words, the trial court proceeding is not intended to be a trial de novo. *Sugar Creek Mobile Estates,* 646 N.E.2d at 64. Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts found by the administrative body. *Id.* However, we need not accord the same degree of deference to an agency's conclusions of law. *Id.* We are free to determine any legal question which arises out of an administrative action. *Indiana State Bd. of Registration for Professional Engineers and Land Surveyors v. Nord,* 600 N.E.2d 124, 128 (Ind.Ct.App.1992), *reh'g denied.*

## DISCUSSION AND DECISION

Resolution of the substantive issues presented in this appeal requires us to construe three statutes: Ind.Code 27–1–3.1–1 *et seq.* ("the Examination Statute"); Ind.Code 27–4–1–1 *et seq.* ("the Unfair Competition & Deceptive Trade Practices Act" or "UC & DTPA"); and Ind.Code 4–21.5 *et seq.* ("the Administrative Orders and Procedure Act" or "AOPA"). We must also interpret Ind. Code 27–8–6–1 ("the Reimbursement Statute") and decide whether IDI correctly applied the term "equal basis" within the meaning of the Reimbursement Statute, and whether the Reimbursement Statute was correctly applied to State Farm's automobile and homeowner policies.

### I. Investigatory Hearing Pursuant to the Examination Statute

State Farm contends that it was deprived of its right to an adversarial adjudicatory hearing under the Administrative Orders and Procedure Act ("AOPA"). Disposition of this issue requires us to define and distinguish an adjudicatory hearing under the AOPA and the Unfair Competition & Deceptive Trade Practices Act ("UC & DTPA") and an investigatory hearing under the Examination Statute.

In IDI's Final Order, the Commissioner found State Farm in violation of the Reimbursement Statute and guilty of unfair claims settlement practices under the UC & DTPA. The sum and substance of State Farm's due process argument relies on specific provisions of the UC & DTPA which provide for the administrative adjudication of alleged violations of that Act. *See* Ind.Code 27–4–1–5 and 6 (1993) (essentially providing notice and an opportunity to be heard at a hearing conducted pursuant to Ind.Code 4–21.5–3). State Farm argues that because the market conduct examination revealed violations of the UC & DTPA, IDI was not permitted to proceed under the authority of the Examination Statute, but rather was required to afford State Farm the rights provided in the UC & DTPA, namely the due process rights enumerated in the AOPA. State Farm also argues that because the market conduct examination revealed a violation of the Reimbursement Statute, it should have been afforded an adjudicatory hearing pursuant to the AOPA. In making this contention, State Farm concedes that the Reimbursement Act does not contain a specific procedure for the administrative adjudication of violations of that Act, and thus argues that the AOPA should apply.

The Examination Statute empowers the Commissioner of IDI to determine that an examination of a specific insurance company should be conducted, to issue a warrant appointing one or more examiners to conduct such an examination, to review the findings of the examination, and to either accept or reject the examination report or to call for an investigatory hearing for the purpose of gathering further facts. Ind. Code 27–1–3.1 *et. seq.* In addition to these powers, if the examination report reveals that the particular insurance company is operating in violation of any law or regulation, the Commissioner may order the company to take particular curative action. Specifically, section 11(b) of the Examination Statute provides the Commissioner a vehicle to cure any defects or deficiencies that have been uncovered by the examina-

tion report. That section provides as follows:

> If the examination report reveals that the company is operating in violation of any law, regulation, or prior order of the commissioner, *the commissioner may order the company to take any action the commissioner considers necessary and appropriate to cure that violation.*

Ind.Code 27–1–3.1–11(b) (1993) (emphasis added). IDI issued its Final Order under the authority of section 11(b) of the Examination Statute.

The examination of State Farm was scheduled and conducted according to the Examination Statute. *See* Ind.Code 27–1–3.1–9 (1993).[2] A written report of the examination was forwarded to IDI by Milliman & Robertson and IDI in turn forwarded a copy to State Farm pursuant to Ind.Code 27–1–3.1–10 (1993).[3] According to the Examination Statute, State Farm was given 30 days in which to make "a written submission or rebuttal with respect to any matters contained in the examination report." *Id.*

Once the examination was completed and IDI was in possession of the examination report, it was permitted to call for an investigatory hearing for the purpose of obtaining additional documentation, information and testimony regarding the examination. Specifically, Ind.Code 27–1–3.1–11(a) provides that after the Commissioner has fully considered the report of examination, he must enter an order:

> (1) adopting the examination report as filed or with modification or corrections;
>
> (2) rejecting the examination report with directions to the examiners to reopen the examination for purposes of obtaining additional data, documentation or information, and refiling the report under this chapter; or
>
> (3) calling for an investigatory hearing with no less than twenty (20) days notice to the company for purposes of obtaining ad-

ditional documentation, data, information and testimony.

Pursuant to Ind.Code 27–1–3.1–11(a)(3), the Commissioner called for an investigatory hearing. Mr. Bushemi conducted the investigatory hearing pursuant to Ind.Code 27–1–3.1–12 and 13 (1993).[4] Ind.Code 27–1–3.1–12(c) specifically provides that the hearing will be "conducted as a nonadversarial confidential investigatory proceeding as necessary for the resolution of any inconsistencies, discrepancies, or disputed issues apparent upon the face of the filed examination report or raised by or as a result of the commissioner's review of relevant work papers or by the written submission or rebuttal of the company." Ind.Code 27–1–3.1–13(c) provides that the hearing will proceed with the commissioner posing questions to the persons subpoenaed and conducting cross examination. Mr. Bushemi conducted the hearing strictly in accordance with the Examination Statute.

State Farm was not denied its due process rights. The Examination Statute provides that "[a]ny order entered under section 11(a) of this chapter shall be considered a final administrative decision that may be appealed under IC 4–21.5–5." Ind.Code 27–1–3.1–12(b). The Examination Statute clearly includes Final Orders issued by the Commissioner following an investigatory hearing as "an order entered under section 11(a)." *See* Ind.Code 27–1–3.1–12(c) (subsection (c) details the manner in which an investigative hearing shall be conducted and then provides that "[w]ithin twenty (20) days of the conclusion of the hearing, the commissioner shall enter an order under section 11(a)(1)"). IDI issued its Final Order on February 7, 1994, and State Farm sought judicial review in the Marion County Circuit Court. State Farm was therefore afforded its full complement of rights, including the right to judicial review of administrative orders.

■ Our primary task in construing a statute is to give effect to the intent of the legislature. *Ashlin Transp. Services, Inc. v.*

2. Ind.Code 27–1–3.1–9 was amended in 1994 as codified in 1995 Supp.

3. Ind.Code 27–1–3.1–10 was amended in 1994 as codified in 1995 Supp.

4. Ind.Code 27–1–3.1–12 and 13 were amended in 1994 as codified in 1995 Supp.

*Indiana Unemployment Ins. Bd.*, 637 N.E.2d 162, 166 (Ind.Ct.App.1994). If the language of the statute is clear and unambiguous, it is not subject to judicial interpretation. *Albright v. Pyle*, 637 N.E.2d 1360, 1363–64 (Ind.Ct.App.1994). We look to the plain, ordinary meaning of the words and phrases in a statute to discern the legislative intent and presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Ashlin Transp. Services*, 637 N.E.2d at 166.

 When an agency interprets its own statute, the reviewing court should accord the agency's interpretation great weight, but the court is not bound to the agency interpretation and should reverse if the agency incorrectly interpreted the statute. *Airco Indus. Gases v. Indiana Michigan Power Co.*, 614 N.E.2d 951, 953 (Ind.Ct.App.1993). When there is more than one statute speaking to the same subject, the more specific or detailed statute should prevail over the more general statute. *Indiana Wholesale Wine & Liquor Company, Inc. v. Indiana Alcoholic Beverage Commission*, 662 N.E.2d 950, 956 (Ind.Ct.App.1996).

 Under the plain meaning of Ind.Code 27–1–3.1–11(b), the Commissioner clearly had the authority to take the action that he took. IDI did not act outside of its statutory authority when it ordered State Farm to immediately comply with the Reimbursement Statute, to adopt written guidelines for the review of claims involving chiropractic services and to comply with certain enumerated terms with regard to its training methods.

The market conduct examination together with the findings of fact and conclusions of law and recommended order of the hearing officer reveal that State Farm was engaging in unfair settlement practices and was violating Indiana law. The clear and unambiguous language of Ind.Code 27–1–3.1–11(b) empowers the Commissioner to order a company that is in violation of law to enact appropriate curative measures.

Ind.Code 27–1–3.1–13 as it existed at the time of the hearing provided in pertinent part as follows:

(a) The commissioner may not appoint an examiner as authorized representative to conduct a hearing. The hearing shall proceed expeditiously with discovery by the company limited to the examiner's workpapers which tend to substantiate any assertions set forth in any written submission or rebuttal. The commissioner or the commissioner's representative may issue subpoenas for the attendance of any witnesses or the production of any documents deemed relevant to the investigation whether under the control of the department, the company, or other persons. The documents produced shall be included in the record and testimony taken by the commissioner or the commissioner's representative shall be under oath and preserved for the record.

\* \* \* \* \* \*

(c) The hearing shall proceed with the commissioner or the commissioner's representative posing questions to the persons subpoenaed. Thereafter, the company and the department may present testimony relevant to the investigation. Cross examination shall be conducted only by the commissioner or the commissioner's representative. The company and the department shall be permitted to make closing statements and may be represented by counsel of their choice.[5]

The Insurance Commissioner is granted broad powers in Title 27. Among these clear grants by the legislature, he is empowered to refuse the renewal of a company's license to engage in the insurance business for failure to submit to or cooperate during an examination, Ind.Code 27–1–3.1–9(b)(3) (1995 Supp.), Ind.Code 27–1–3–10 (1993); he is empowered to order an insurance company to discontinue any activity deemed to be illegal, unauthorized, or unsafe, Ind.Code 27–1–3–19 (1993); he is further empowered to investigate insurance companies, issue an order citing any irregularities revealed by such investigation,

---

5. The current version of Ind.Code 27–1–3.1–13(c) as amended in 1994 provides that "[t]he commissioner, the department, and the company may cross-examine witnesses." Ind.Code 27–1–3.1–13(c) (1995 Supp.) (as amended by P.L. 130–1994, SEC.12; P.L. 116–1994, SEC.16).

and order curative action as he deems necessary. Ind.Code 27–1–3.1 *et seq.* This list is not intended to be exhaustive, but rather illustrative of the plenary power granted to the Insurance Commissioner.

In this case, a hearing was conducted under section 11(a)(3) of the Examination Statute, that hearing followed the letter of section 12 of the Examination Statute and the Commissioner then proceeded under section 11(b) to cure the violations revealed by the market conduct examination and clarified during the investigative hearing. The Examination Statute covers the particular subject-matter of market conduct examinations and the various issues appurtenant to the investigation of insurance companies' market conduct. As the Examination Statute covers the subject of this case most specifically, the Examination Statute should prevail. Furthermore, although IDI found State Farm in violation of other statutory provisions, it did not impose any of the penalties provided for under those other statutes. For example, the UC & DTPA provides for civil penalties and the suspension or revocation of the company's license. IDI did not impose any of these sanctions under the UC & DTPA. Rather, IDI's actions were properly taken under its statutory authority. We will not disturb IDI's regulatory action.

## II. The Reimbursement Statute

Ind.Code 27–8–6–1 ("the Reimbursement Statute") (1993) governs the method by which providers of health care are to be reimbursed by insurance in Indiana. The Reimbursement Statute provides as follows:

Notwithstanding any provision of any individual or group policy of accident and health insurance, or any provision of a policy, contract, plan, or agreement for hospital or medical service or indemnity, wherever such policy, contract, plan, or agreement provides for reimbursement for any service which is in the lawful scope of practice of a duly licensed dentist, health service provider in psychology, podiatrist, osteopath, optometrist, or chiropractor, the person entitled to benefits or the person performing services under the policy, contract, plan, or agreement shall be entitled to reimbursement on an equal basis for such service, whether the service is performed by a physician, dentist, health service provider in psychology, podiatrist, osteopath, optometrist, or chiropractor duly licensed under the laws of this state.

Ind.Code 27–8–6–1.

## A. Applicability of the Reimbursement Statute

■ First, State Farm contends that the Reimbursement Statute does not apply to the reimbursement of medical expenses under its homeowner and automobile policies. Rather, according to State Farm, the statute is intended to apply only to first party health and accident policies which provide for expense reimbursement.

Essentially, the Reimbursement Statute requires insurance companies to refrain from discrimination in reimbursing insurance claims and this mandate applies to "... any provision of any individual or group policy of accident and health insurance ... [and] any provision of a policy, contract, plan, or agreement for hospital or medical service or indemnity." We find the clear language of the statute makes the reimbursement mandate applicable to (1) individual or group accident and health insurance policies; or (2) any policy that provides for hospital or medical service or indemnity, whenever such policy provides for reimbursement for services rendered by the enumerated duly licensed health care providers. When a statute is clear and unambiguous, we hold the statute to its clear and plain meaning. *See Ashlin Transportation,* 637 N.E.2d at 166. Further, we presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Giving the words of the statute their plain and ordinary meaning while remaining mindful of the legislative intent of equality, we find no reason to conclude that the legislature intended to exclude third party medical reimbursements made under automobile and homeowner policies from the Reimbursement Statute. To order State Farm to reimburse for medical and hospital services under its home and auto policies in a nondiscriminato-

ry manner is in keeping with the intent of the legislature.

### B. "Equal Basis" Within the Meaning of the Reimbursement Statute

▪ Next, State Farm contends that the term "equal basis" as used in the Reimbursement Statute is vague and fails to set an ascertainable standard. We disagree. The intent of the legislature in enacting the Reimbursement Statute was to mandate that all enumerated duly licensed health care providers be reimbursed for like services without discrimination. The medical profession, together with the insurance industry, has set standards such as reasonable and customary charges for medically necessary services. State Farm is merely being required to set ascertainable and current standards for determining which charges are reasonable and customary and which claims require independent review. Thus, State Farm attempts to cast confusion where there is none.

### III. Substantial Evidence

▪ Finally, State Farm contends that IDI's Final Order is not supported by substantial evidence. The trial court issued a 22 page order including thorough and well-reasoned findings of fact and conclusions of law affirming the Commissioner's Final Order. We have no hesitation in concluding that the finding that State Farm paid chiropractic claims in homeowner and automobile policies at a significantly lower rate than it paid similar non-chiropractic claims is substantially supported by the evidence in the record. As the market conduct examination revealed and as the hearing officer and Commissioner found, State Farm was operating in violation of the Reimbursement Statute and in violation of the UC & DTPA. The Commissioner found State Farm in violation of the following unfair claim settlement practices under Ind. Code 27–4–1–4.5 (1993) of the UC & DTPA:

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

(6) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

The Commissioner's Final Order which incorporated hearing officer Bushemi's findings and conclusions states the following:

7. State Farm failed to adopt and implement during 1990 reasonable standards for the prompt investigation of claims for services performed by chiropractors and therefore committed an unfair claim settlement practice (sic) as described in Indiana Code § 27–4–1–4.5(3).

9. State Farm did not attempt in good faith during 1990 to effectuate prompt, fair, and equitable settlements of claims in which liability had become reasonably clear when the claim involved services performed by chiropractors, and therefore committed an unfair claim settlement practice as described in Indiana Code § 27–4–1–4.5(6).

(Hearing Officer Bushemi's Recommended Order as adopted by and incorporated into Commissioner Mortell's Final Order; R. 1206, 1210). The market conduct examination revealed that State Farm had no objective criteria for determining under what circumstances an outside review agency should be employed to review claims involving chiropractic services and expenses; that claims involving chiropractic services were sent to outside review organizations more frequently than claims for services performed by non-chiropractors; and that State Farm failed to reimburse chiropractors on an equal basis with other health care providers.

The Commissioner also found State Farm in violation of the Reimbursement Statute as follows:

3. For 1990 claims, State Farm did not reimburse chiropractors for their services on an equal basis with physicians and other health care providers, and is therefore in violation of Indiana Code § 27–8–6–1.

(Hearing Officer Bushemi's Recommended Order as adopted by and incorporated into Commissioner Mortell's Final Order; R. 1205, 1210). The market conduct examination revealed that State Farm rarely reimbursed a non-chiropractic claim in an amount less than the billed charges, while frequently reducing the amount reimbursed for chiropractic claims. Specifically, the examination revealed that on a pure dollar basis, State

Farm only paid 41.4% of the billed chiropractic charges on claims that had been independently reviewed. State Farm argues that it paid chiropractors five times more than other providers. It is likely that the use of hands-on chiropractic treatment is more expensive than another provider's treatment plan, and therefore this "net payment" argument adds little to the "equal reimbursement" issue. The evidence supports the finding that State Farm violated the Reimbursement Statute by failing to reimburse chiropractors on an equal basis with other health care providers. State Farm must adopt standards and claims management criteria that are applied uniformly to all medical providers.

While avoiding any reweighing of the evidence, as we must, we find that there is substantial evidence in the record to support IDI's decision. The Commissioner acted within his statutory authority and State Farm has failed to carry its burden of showing that IDI's Final Order was arbitrary and capricious or not supported by substantial evidence.

### CONCLUSION

IDI acted properly when it ordered State Farm to implement practices to cure the irregularities which were revealed during the market conduct examination and subsequent investigatory hearing conducted pursuant to the Examination Statute. Further, IDI's interpretation and application of the Reimbursement Statute was correct and the Commissioner's Final Order is supported by substantial evidence in the record.

The regulation of insurance companies within the State of Indiana is entrusted to the Department of Insurance and the Commissioner of that department. Under the facts before us, we decline to disturb IDI's regulatory action taken pursuant to its statutory authority. Accordingly, the trial court's order affirming IDI's Final Order is affirmed.

We affirm.

RUCKER and BARTEAU, JJ., concur.