Robert BRYANT and Richard Boucher, Appellants–Plaintiffs,

v.

INDIANA STATE DEPARTMENT OF HEALTH, Appellee–Defendant.

No. 49A05–9706–CV–250.

Court of Appeals of Indiana.

May 21, 1998.

Dennis K. Frick, Claire E. Lewis, John T. Greiner, Legal Services Organization of Indiana, Indianapolis, for Appellants–Plaintiffs.

Julia Blackwell Gelinas, David E. Jose, Locke Reynolds Boyd & Weisell, Indianapolis, for Evergreen Healthcare Ltd. d/b/a Beech Grove Healthcare Center.

Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Indiana State Department of Health.

## OPINION

RATLIFF, Senior Judge.

### Case Summary

Plaintiffs Robert Bryant and Richard Boucher appeal from the trial court's findings of fact and conclusions of law on judicial review affirming the Indiana State Department of Health's administrative determination that the plaintiffs' involuntary transfer from the Beech Grove Healthcare Center (the "Center") was in compliance with Indiana's regulations. We affirm.

### Issue

Plaintiffs raise one issue for our review which we restate as whether the Center proved by a preponderance of the evidence that it could not meet its ventilator-dependent residents' needs and that transfer to other facilities was necessary for the resi-

dents' welfare due to the closing of the Center's ventilator unit.

### Facts and Procedural History

In 1990, the Center established a ventilator unit and began accepting residents who were ventilator-dependent. An outside contractor provided specialized respiratory care twenty-four hours a day for those residents. The Center was reimbursed by Medicaid for the cost of having two respiratory therapists present twenty-four hours a day for the Center's seven ventilator-dependent residents. In 1995, Medicaid reimbursement rules were changed, reducing the hours for which the Center could be reimbursed for ventilator care to cover the cost of only one therapist for twelve hours a day. Both the Center and its outside contractor believed that ventilator-dependent residents required twenty-four hour specialized care, and therefore, the Center decided to close its ventilator unit. The Center issued the notices required for involuntary transfer to its residents, stating that "this facility is closing the ventilator unit. Therefore we can no longer meet your medical needs." R. 824, 834. Although the unit was to officially close on March 10, 1995, the Center was willing to continue to provide ventilator care on an emergency basis until all residents had been transferred to appropriate facilities.

Plaintiffs [1] filed a notice of appeal with the Department of Health requesting a hearing on the proposed transfer. Following the hearing, the hearing officer determined that the Center had proven by a preponderance of the evidence that its transfer of the ventilator-dependent residents was within the confines of 410 Ind.Admin.Code 16.2–2–3(i)(4), which defines the reasons for which nursing facility residents can be transferred or discharged.[2]

Plaintiffs then requested an administrative appeal of the hearing officer's decision. The Department of Health appointed an administrative law judge, who held a hearing and then issued a recommended order upholding the hearing officer's decision. The ALJ specifically adopted the hearing officer's findings of fact, and added the following finding: "The facts as stated in the foregoing findings of fact substantiate the need for transfer of the resident under 410 IAC 16.2–2–3(i)(4)(A)." The ALJ also adopted the hearing officer's conclusions of law, adding the following conclusion: "The termination of ventilator services effectively renders Beech Grove Healthcare Center incapable of meeting the resident's needs within the meaning of 410 IAC 16.2–2–3(i)(4)(A)." R. 354–56. The ALJ's recommended order was adopted by an Appeals Panel as the final order of the Department of Health. R. 409–10.

Plaintiffs then filed a petition for judicial review. After oral argument, the trial court issued its Findings of Fact and Conclusions of Law entering judgment in favor of the Department of Health and the Center. This appeal ensued in due course.

### Discussion and Decision [3]

A nursing facility cannot transfer or discharge a resident from the facility unless, among other reasons, "the transfer or discharge is necessary for the resident's welfare and the resident's needs cannot be met in the facility...." 410 Ind.Admin.Code 16.2–2–3(i)(4)(A). Plaintiffs argue that the Center did not prove that their needs could not be met in the facility and that transfer was

1. All seven ventilator-dependent residents of the Center were parties to the informal appeal hearing. Mr. Bryant, Mr. Boucher and two other residents, Georgetta Wood and Nancy Brown, then appealed the hearing officer's decision to the Department of Health. Ms. Wood was dismissed from the administrative appeal after her death. Thereafter, Mr. Bryant, Mr. Boucher and Ms. Brown petitioned for judicial review of the administrative decision. Ms. Brown was dismissed from that case after her death. For purposes of this opinion, all references to the "plaintiffs" refer only to Mr. Bryant and Mr. Boucher at all stages of the proceedings.

2. The "transfer" of a resident from a nursing facility is defined as the movement of a resident from a skilled nursing facility to another institutional setting. 42 C.F.R. § 483.202. A "discharge" is the movement of resident from a skilled nursing facility to a noninstitutional setting. Id. Therefore, although the applicable regulation addresses both, this proceeding is concerned with a "transfer" rather than a "discharge."

3. Plaintiffs' request for Oral Argument is denied.

necessary for their welfare. Plaintiffs base their argument upon a literal interpretation of the word "cannot" as used in the regulation: they urge us to construe the regulation such that once a nursing facility has undertaken to provide an optional service, it cannot choose at a later time to discontinue that service, because it *is able to* continue to meet its residents' needs, as evidenced by its past provision of the service. Both the Center and the Department of Health respond that, because no state or federal law requires a nursing facility to provide ventilator services, the Center could close its ventilator unit at any time, and especially once a change in the reimbursement rules made it either financially burdensome or medically unsafe to continue to provide the service. The Center and the Department of Health assert that upon deciding to close the unit, the Center became unable to meet its residents' needs and transfer was necessary for their welfare, and the only restriction upon the Center's decision was that it follow the proper procedures for an involuntary transfer of its ventilator-dependent residents, as found in 410 Ind.Admin.Code 16.2–2–3(i).

A court reviewing an administrative decision is limited to determining whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal principles. Ind.Code § 4–21.5–5–14; *Indiana Dep't of Natural Resources v. United Refuse Co.*, 615 N.E.2d 100, 103 (Ind. 1993). The trial court proceeding is not intended to be a trial de novo, but rather the court simply analyzes the record as a whole to determine whether the administrative findings are supported by substantial evidence. *Natural Resources Comm'n v. Sugar Creek Mobile Estates*, 646 N.E.2d 61, 64 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* Courts that review administrative determinations, at both the trial and appellate level, are prohibited from reweighing the evidence and judging the credibility of witnesses and must accept the facts as found by the administrative body. *Id.* Although a reviewing court owes some deference to an administrative agency's findings of fact, no

such deference need be accorded an agency determination of a matter of law. *Indiana Dep't of Public Welfare v. Payne,* 622 N.E.2d 461, 465 (Ind.1993).

This case turns on the construction of the phrase "cannot meet the resident's needs" as used in the regulation governing involuntary transfer. Rules of statutory construction are also applicable to the interpretation of administrative regulations. *State v. Carmel Healthcare Management, Inc.,* 660 N.E.2d 1379, 1386 (Ind.Ct.App.1996). "The cardinal rule of statutory construction is to ascertain the intent of the drafter...." *Id.* We ascertain intent by giving effect to the ordinary and plain meaning of the language used. *Clifft v. Indiana Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995). We give words their common and ordinary meaning, without " 'overemphasizing a strict literal or selective reading of individual words.' " *Spaulding v. Int'l Bakers Serv.,* 550 N.E.2d 307, 309 (Ind.1990) (quoting *Foremost Life Ins. Co. v. Dept. of Ins.,* 274 Ind. 181, 186, 409 N.E.2d 1092, 1096 (1980)). When a regulation is susceptible to more than one interpretation, we may consider the consequences of a particular interpretation. *Carmel Healthcare Management, Inc.,* 660 N.E.2d at 1386.

In support of their argument that the Center was required to continue providing ventilator services because it was able to, Plaintiffs cite *In the Matter of the Involuntary Discharge or Transfer of J.S. by Hall,* 512 N.W.2d 604, 612 (Minn.Ct.App.1994). In *J.S.,* the Commissioner of Health determined that a nursing facility could not involuntarily transfer a resident because the facility had failed to prove that the transfer was necessary for her welfare and that it could not meet her needs. The Minnesota Court of Appeals affirmed the Commissioner's determination, but noted that it was a "close case." *Id.* at 612. The facility had attempted to transfer J.S. because "it was not equipped to care for unstabilized mentally ill residents." *Id.* at 608. However, the facility had a duty under both federal and state law to provide mental health services, and under federal law, was required to conduct periodically a

comprehensive assessment of each resident's functional capacity and develop a comprehensive plan to meet the resident's needs. *Id.* at 609, 611 (citing 42 C.F.R. § 483.20). The Commissioner determined that the facility had not adequately proven that it had properly assessed J.S.'s mental and physical health or that it had developed a care plan for J.S. and therefore, had not proven that it could not meet her needs. The court upheld this determination, stating that in the absence of clinical evidence that the facility had exhausted all required avenues of assessment, it was not entitled to elect the "last resort"—transfer. *Id.* at 612. Had the facility conducted the required assessment, the care plan could have included transfer, however. *Id.*

■ *J.S.* does not provide clear support for the plaintiffs' position. In contrast, the evidence in the record before us demonstrates that ventilator-dependent residents require specialized, around-the-clock care, because ventilators are life-support devices. A ventilator-dependent resident's condition could change significantly at any time, and specially-trained personnel are required to assess the situation and respond accordingly. This evidence supports the Department of Health's determination that the closing of the ventilator unit effectively rendered the Center incapable of meeting its ventilator-dependent residents' needs within the meaning of the regulation. No state or federal regulations required the Center to provide the ventilator services. The Center provided to each resident the notice required by regulation in order to involuntarily transfer him or her from the facility. Each resident's doctor had documented that transfer was medically necessary due to the closing of the unit. R. 833, 842. Further, in contrast to the Plaintiffs' assertion that their welfare was not considered in the transfer decision, it was the welfare of the residents which in part prompted the closing of the unit—the Center believed that anything less than twenty-four hour respiratory care for its ventilator-dependent residents would be medically inadequate. The choice presented to the Center by the change in Medicaid reimbursement rules was either to provide only that care for which it would be reimbursed and put its residents at risk, or provide the care it believed necessary and suffer financially.

■ We do not believe that the use of the phrase "the resident's needs cannot be met" in the regulation defining the limited instances in which a resident may be involuntarily transferred was intended to force a nursing facility to provide care which it is theoretically able to provide, regardless of the consequences. The Center was entitled to make the decision to close its ventilator unit, subject only to the requirements of 410 Ind.Admin.Code 16.2–2–3(i) regarding documenting the residents' clinical records, giving adequate notice and an opportunity for an appeal hearing, and preparation of and assistance in implementing a relocation plan. Having made that decision, the Center became medically unable to care for its ventilator-dependent residents, and transfer of the residents to other facilities was necessary for their welfare. Plaintiffs' transfer from the Center was accomplished in compliance with 410 Ind.Admin.Code 16.2–2–3(i), and the decision of the Department of Health and the trial court that such transfer was allowed was not in error.

Affirmed.

SHARPNACK, C.J., and RUCKER, J., concur.