**INDIANA STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS and State of Indiana, Appellants–Respondents Below,**

v.

**Kenneth W. NORD, Appellee–Petitioner Below.**

No. 02A03–9205–CV–156.

Court of Appeals of Indiana, Third District.

Sept. 28, 1992.

Rehearing Denied Dec. 9, 1992.

Linley E. Pearson, Atty. Gen., Ann Scholl Long, Deputy Atty. Gen., Indianapolis, for appellants-respondents.

Steven R. Shine, Fort Wayne, Kenneth M. Waterman, Baker & Daniels, Fort Wayne, for appellee-petitioner.

STATON, Judge.

Indiana State Board of Registration for Professional Engineers and Land Surveyors and the State of Indiana ("Board") appeal the trial court's grant of Kenneth Nord's Petition for Review of Administrative Action. Two issues are presented for our review:

I.  Whether the trial court reweighed the evidence and resolved issues of fact.

II. Whether the trial court improperly considered evidence outside the record of administrative proceedings.

We affirm.

The facts are undisputed. Don Steininger of Steininger Development employed MSKTD Associates, Inc. to design a two-story office building which was erected in Midwestern Corporate Park in Fort Wayne, Indiana. Subsequently, Steininger employed Felderman Construction Company to erect a second office building ("Midwestern Corporate Park Phase Two"). Steininger provided the MSKTD plans to draftsman Greg DeWeese of Felderman Con-

struction and advised DeWeese that he (Steininger) "owned" the plans.

DeWeese made preliminary changes to the plans at Steininger's direction, removed the MSKTD title strip and substituted his own. He then presented the revised plans to Nord, president of the architectural firm of CDN, Incorporated. Nord and DeWeese conferred on two or three occasions; Nord directed DeWeese to draft certain changes which were subsequently reviewed by Nord. Ultimately, Nord certified the plans for Midwestern Corporate Park Phase Two.[1]

The State of Indiana charged that Nord, an Indiana licensed architect and engineer, placed his engineer's seal on building construction plans not prepared by him or by his regularly employed subordinate.[2] Subsequent to a disciplinary hearing held on April 18, 1991, the Board ordered Nord's engineering registration suspended indefinitely.[3] Nord was prohibited from petitioning for the reinstatement of his registration for a period of two years. If reinstated, Nord's registration would be probationary for two years. Record, pp. 8–11.

On June 10, 1991, Nord filed his Petition for Review of Administrative Action, Request for Special Findings of Fact and Conclusions of Law, Petition for Stay of Administrative Action and Affidavit of Kenneth Nord. Oral argument was held on November 22, 1991. On January 24, 1992, the trial court issued a "Memorandum Order of Court's Findings of Fact, Conclusions of Law and Order," reversing the Board's order as contrary to law. Record, pp. 343–46. The Board now appeals to this court, contending that the trial court improperly reweighed the evidence.

## I.

### Resolution of Issues of Fact

■ I.C. 25–31–1–22.1(b)(7) provides that sanctions may be imposed upon a practitioner whose seal was affixed to "any plans, specifications, or drawings which were not prepared by him or under his personal supervision by his regularly employed subordinates." Throughout the disciplinary hearing and oral argument before the trial court, the parties disagreed as to whether Nord "prepared" the commercial building plans at issue and as to whether he directed his "regularly employed subordinate" in their "preparation." The trial court appropriately determined that a dispute regarding the meaning and effect of words used in I.C. 25–31–1–22.1(b)(7) presents a question of law.

A review of the Board's "Final Order" discloses that the Board made no explicit interpretation of the terms at issue. However, the Board implicitly equated the term "prepared" in I.C. 25–31–1–22.1(b)(7) with the term "created" in the promulgated regulation 864 IAC 1.1–7–3.

### "Findings of Fact

1. Kenneth W. Nord [hereinafter 'Respondent'], who practices at 116 West

---

1. Additionally, Nord communicated with Steininger concerning soil testing and conducted a series of on-site "compliance visits."

2. IND.CODE 25–31–1–22.1 provides in pertinent part:

   "(b) A practitioner shall conduct his practice of engineering in accordance with the standards established by the board under section 7(a) of this chapter and is subject to the exercise of the disciplinary sanctions under subsection (e) if after a hearing the board finds:

   .    .    .    .    .

   (7) a practitioner has permitted his seal to be affixed to any plans, specifications, or drawings which were not prepared by him or under his personal supervision by his regularly employed subordinates."

   Pursuant to an Amended Complaint filed April 12, 1991, the Board also referenced its promulgated regulation 864 IAC 1.1–7–3, providing in pertinent part:

   "The seal shall be affixed to documents and instruments ... only on such documents and instruments which have been created by the Registrant or by the regularly employed and directly supervised subordinates of the registrant." Record, pp. 124–25.

3. Pursuant to IND.CODE 25–1–7–2, the Attorney General of Indiana is empowered to bring disciplinary complaints before the Indiana State Board of Registration for Professional Engineers and Land Surveyors. The Board is empowered to hold disciplinary hearings pursuant to I.C. 25–31–1–22.1(b) and IND.CODE 4–21.5–3–25. Sanctions may be imposed in accordance with I.C. 25–31–1–22.1(e).

Rudisill Boulevard, Fort Wayne, Indiana, 46804, is and was at all times relevant herein, an engineer licensed to practice engineering in the State of Indiana under registration No. PE60015600.

2. That in January, 1988, Allen C. Sheldon, a registered engineer in the State of Indiana, employed by MSKTD and Associates, Inc., designed and prepared construction drawings for Midwestern Corporate Park in Fort Wayne, Indiana.

3. That in the fall of 1989, a second building, similar to the first, was to be added to the office park. Allen Sheldon was not retained to design or prepare design drawings for the new building.

4. That on or about January 4, 1990, Kenneth W. Nord submitted design drawings for the new building and an Application for Construction Design Release to the Plan Review Division of the Indiana Department of Fire and Building Services. The Respondent certified that 'The plans and specifications to be filed in conjunction with this application (A) were created by me and/or my employees.'

5. That some of these design drawings submitted to the Indiana Department of Fire and Building Services by the Respondent were identical reproductions of those originally done by Allen Sheldon for the first building.

6. That other drawings in the set submitted by the Respondent were reproductions of the original drawings prepared by Allen Sheldon with minor modifications.

7. That prior to the submission of the drawings by the Respondent to the Indiana Department of Fire and Building Services, the title block of Felderman Construction, Inc. was substituted on the drawings for the title block of MSKTD and Associates, Inc. and said plan sheets were shown to be drawn by a G. DeWeese.

8. That all drawings referenced in Findings of Fact 6 and 7 and submitted to the Indiana Department of Fire and Building Services were signed and sealed by the Respondent, Kenneth W. Nord.

In his testimony, Mr. Nord admitted that only certain changes were made by him, and that the basic drawings were copies and not prepared by him or his regularly employed subordinates.

9. That during Fall, 1989 and through January, 1990, G. DeWeese was not an employee of Kenneth W. Nord nor his company, CE & M, Inc. Mr. DeWeese was an employee of Felderman Construction.

10. The preparation of a set of building design plans requires the substantiation of soil conditions for the purposes of proper foundation design. Since the second building was to be erected on a different location near some questionable soil conditions, the Respondent recognized the need for additional soil borings and requested they be made. Mr. Steininger, the developer, submitted a letter to the Respondent indicating that the original soil information was satisfactory and that he would accept responsibility for the foundation design. On the basis of this letter, the Respondent then submitted the original foundation design without further testing or design.

## CONCLUSIONS OF LAW

1. That Indiana Code 25–31–1–22.1, regulating the practice of engineering, provides, in part, as follows:

(b) A practitioner shall conduct his practice of engineering or land surveying in accordance with the standards established by the board under section 7(a) of this chapter and is subject to the exercise of the disciplinary sanctions under subsection (e), if after a hearing the board finds:

(3) A practitioner has knowingly violated ... any rule adopted by the board, under section 7(a) under this chapter;

(7) A practitioner has permitted his seal to be affixed to any plans, specifications, or drawings which were not prepared by him, or under his personal supervision by his regularly employed subordinates.

2. That 864 IAC 1.1–7–3, on the application of the engineer's seal, provides, in part, as follows:

(a) The seal shall be affixed to documents and instruments ... only on such documents and instruments which have been created by the Registrant or by the regularly employed and directly supervised subordinates of the registrant.

3. By engaging in the conduct described in the Findings of Fact, the Respondent has violated IC 25–31–1–22.-1(b)(7) and IC 25–31–1–22.1(b)(3) (through a violation of 864 IAC 1.1–7–3) and in so doing abrogated his responsibility to protect the health, safety and welfare of the public.

4. The Respondent argued that 864 IAC 1.1–7–4(c) violates antitrust laws. This argument has no application to this case because he was not charged with a violation of that rule. Furthermore, the Respondent's argument is not convincing that the rule violates antitrust laws.

5. IC 25–31–1–22(e) gives the Board the authority to impose sanctions when it finds a registrant guilty in a disciplinary proceeding."

Record, pp. 8–10.

■ Judicial review of an administrative decision is limited to whether the agency lacked subject matter jurisdiction or employed improper procedures or whether the decision was unsupported by substantial evidence, was arbitrary or capricious, or was in violation of any constitutional, statutory or legal principle. *Bd. of Tax Com'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 921. The court must view the record of proceedings in a light most favorable to the administrative proceeding and the evidence cannot be reweighed. *Thomas v. Dept. of Emp. & Training Serv.* (1989), Ind.App., 543 N.E.2d 397, 399.

■ Although the court is bound by findings of fact which are supported by substantial evidence, the court is free to determine any legal question which arises out of an administrative action. *Hamilton County D.P.W. v. Smith* (1991), Ind.App., 567 N.E.2d 165, 168. When an agency interprets its own statute, the reviewing court should accord the agency interpretation great weight, but is not bound thereby. *Id.* In construing a statute, the court presumes that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *reh. denied, trans. denied.* Words must be given their plain, ordinary and usual meaning, unless a contrary purpose is clearly shown by the statute. *Sheriff's Merit Board v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235, 237.

■ The trial court entered findings and conclusions providing:

"The record before the Board supports its findings but not its legal conclusion. The Petitioner engaged [in] the practice of engineering within the meaning of I.C. 25–31–1–2(d). More specifically, the Petitioner performed both a professional service and creative work requiring the application of the enumerated sciences thereto when he evaluated and proposed substantive investigation as to certain specifications in accordance with his best judgment upon existing plans and supervised the construction of the building.

The question before this Court is one of law not of the sufficiency of the evidence as the record appears to be undisputed.

The Board confined its findings to the issues raised in the Amended Complaint. Specifically, the Attorney General complained (and confirmed at oral argument before this Court) that the act which it had complained of Nord was alleged in paragraph seven (7) of the Amended Complaint and the governing authority therefor was I.C. 25–31–1–22.1(b)(7) and 864 IAC 1.1–7–3, viz: authorization and use of the registered engineer's seal. In contrast, the Amended Complaint was not about pirating another's intellectual property; rather, who may affix such a seal and the consequences for so doing.

In 1989, I.C. 25–31–1–16 permitted a registered engineer to seal and accept responsibility for enumerated categories

of documents which either he or a regularly employed subordinate prepared. Later on in the same chapter, section 22.1 (added by Acts 1981, P.L. 222, Sec. 235. Amended by P.L. 240–1985, Sec. 11) defines a practitioner as one who is registered under this chapter and established standards and sanctions therefor. The legislation enables a board (duly authorized in the chapter) to establish standards and proscribe certain acts for which disciplinary proceedings shall be conducted. Among the proscribed acts is the misuse of the seal authorized in Section 16.

The parties quarrel over the meaning of two (2) words used in the legislation: the words 'preparation' in Sections 16 and 22.1(b)(7) and 'created' in regulation 1.1–7–3, *supra.* The Court finds that the distinctions are without a difference and, in any event, the regulatory authority is bound by its statutory, enabling authority. Sections 16 and 22.1(b)(7) of the chapter are pre-emptory [sic] of any regulation promulgated to the contrary thereunder. Furthermore, the Board's findings appear to be addressed to the statutory not the regulatory wording. See Findings numbered 8 and Conclusions of Law numbered 1.

The parties also quarrel about the interpretation of 'regularly employed subordinates' used in the statutes and regulation—yet do not dispute the facts. Nord evaluated and directed substantive investigation of some of the specifications and supervised the ministerial act of drafting. The ostensible owner of the plans and of the project waived Nord's best advice. Furthermore, it is undisputed that he both supervised and claimed responsibility for construction. The substantive nature of Nord's advice relative to soil bearing specifications were underscored in the Board's finding numbered 10. But for the owner's waiver, Nord would have directed and evaluated new soil bearing strata testing. The certification of his efforts was all that was legally necessary regardless of whomsoever may have also contributed to the plans.

Nord certified his professional judgment not another's."

Record, pp. 343–45.

Contrary to the Board's assertion, the trial court did not reweigh evidence to resolve disputed facts. Rather, the trial court addressed a question of law: whether Nord's efforts relative to the plans for Midwestern Park Phase Two—the extent of such efforts being undisputed—constituted preparation of the plans. The trial court was not bound by the Board interpretation:

"Law is the province of the judiciary. Our constitutional system empowers the courts to draw legal conclusions. Recognizing this authority, the statute declares that a reviewing court may set aside agency action 'not in accordance with law.'"

*Public Emp. Retirement Fund v. Miller* (1988), Ind., 519 N.E.2d 732, 733. I.C. 25–31–1–22 and related statutes offer no definition of "prepare." Thus, the term is appropriately given its plain and ordinary meaning. *Sheriff's Merit Board, supra.* Black's Law Dictionary (5th Ed.1979) defines "prepare" as "to provide with necessary means; to make ready; to provide with what is appropriate or necessary." According to Webster's Ninth New Collegiate Dictionary (1985) prepare is "to make ready beforehand for some purpose, use or activity."

Moreover, there exists persuasive authority construing the meaning of the word "prepared" appearing in a Florida statute governing the affixation of an architect's seal. *Medlin v. Florida State Bd. of Architecture,* Fla.App., 382 So.2d 708, *cert. denied,* 376 So.2d 71. The court determined that a construction of the word "prepared" which required complete redrawing of plans in every circumstance would be arbitrary and unreasonable and would create unreasonable expense and hardship for clients without promoting the protection of the public against improper acts and motives of the profession. *Id.* at 710.

Using the common and ordinary meaning of the word "prepared," Nord "prepared" the plans at issue. The trial court's deter-

mination that Nord's efforts constituted "preparation" did not involve the resolution of disputed facts. Nor did the court err in reaching its own conclusion on a question of law.

## II.

### *Consideration of Nord Affidavit*

The Board alleges that the trial court erred in reviewing evidence outside the agency record; namely, the "Affidavit of Kenneth Nord" filed June 10, 1991. Nord responds that the affidavit was filed as an exhibit to his "Petition for Stay of Administrative Action" for the sole purpose of providing a summary of the evidence for the court's consideration at the temporary restraining order hearing held June 12, 1991. He contends that the affidavit synopsized, rather than supplemented, the Agency record which was unavailable for court review before August 1991. Finally, he argues that the Record of Proceedings herein discloses no indication that the trial court relied upon the affidavit in issuing its final order.

The record supports Nord's contention that the affidavit was offered at the temporary restraining order hearing in lieu of an official disciplinary hearing record then unavailable. Record, pp. 354, 363. Furthermore, there is no indication that the trial court relied upon the affidavit in ruling upon the substantive issue before it. The Board fails to demonstrate reversible error in this regard.

Affirmed.

HOFFMAN, and BUCHANAN, JJ., concur.