# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 09 2016, 6:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Douglas K. Briody
Law Office of Doug Briody
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| L.M. Zeller, Individually, and D/B/A Zeller Elevator Company, LEO Mark Zeller, Louis M. Zeller III, Andrew M. Boeglin, and Matthew Boeglin, | November 9, 2016 |
| *Appellants-Petitioners,* | Court of Appeals Case No. 65A05-1512-CP-2331 |
| v. | Appeal from the Posey Circuit Court |
| Indiana Fire Prevention and Building Safety Commission, | The Honorable James M. Redwine, Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 65C01-0811-CP-303 |

**Robb, Judge.**

# Case Summary and Issues

[1] L.M. Zeller, individually ("Zeller") and doing business as Zeller Elevator Company ("ZECO"), and ZECO employees Leo Mark Zeller, Louis M. Zeller III, Andrew M. Boeglin, and Matthew Boeglin (collectively, the "Applicants") appeal a trial court's order denying their petition for judicial review and affirming the action of the Indiana Fire Prevention and Building Safety Commission ("Commission") declining to renew their elevator contractor and/or elevator mechanic licenses for failure to satisfy the continuing education ("CE") requirement. The Applicants raise several issues for our review which we consolidate and restate as two: 1) whether the Commission's decision not to renew the licenses was arbitrary or capricious, and 2) whether the ALJ conducted a proper review of the agency action. Concluding the Commission's action was not invalid for any reason and the ALJ's review was proper, we affirm.

# Facts and Procedural History

[2] Zeller, an elevator contractor and mechanic, has owned and operated ZECO since 1967. Leo Mark Zeller, Louis M. Zeller III, Andrew M. Boeglin, and Matthew Boeglin are elevator mechanics employed by ZECO.

[3] In 2002, the Indiana legislature enacted a statutory scheme that for the first time required both elevator contractors and elevator mechanics to be licensed as of May 1, 2003. *See* Ind. Code §§ 22-15-5-6 through -16. The Indiana Department

of Homeland Security ("Department"), through its Division of Fire and Building Safety ("Division"), has the duty to administer the licensing program. Ind. Code § 10-19-7-2(6). The Commission is the ultimate authority over the Division. The licensing statute had a grandfathering provision which allowed contractors and mechanics with sufficient work experience to obtain an initial license without examination if the applicants applied for the license on or before May 1, 2003. Ind. Code § 22-15-5-7(c) (as to contractors), § 22-15-5-12(b)(4) (as to mechanics). The initial license expires on December 31 of the second year after issue; renewal licenses are valid for two years. Ind. Code § 22-15-5-9(b), (c); Ind. Code § 22-15-5-12(e), (f). In order to renew a license, applicants must submit proof of completion of the CE required by the statute, among other things. Ind. Code § 22-15-5-8(b)(2); Ind. Code § 22-15-5-12(d)(2). The CE requirement is "at least eight (8) hours of instruction that must be attended and completed within one (1) year before a license renewal." Ind. Code § 22-15-5-15(c). For a course to satisfy this CE requirement, "the continuing education provider, instructor and the curriculum must have been approved by the [D]epartment." Ind. Code § 22-15-5-15(d).

[4] The Applicants received their initial licenses in 2003 pursuant to the grandfathering provisions of the licensing statute (good from the date of issue until December 31, 2005). In 2005, the Applicants attended a course at Ivy Tech that had been approved by the Department for CE credit. The Division approved the renewal of their licenses without incident for a two-year period ending December 31, 2007. In late 2007, ZECO reached out to the Division,

seeking information about whether Ivy Tech would be providing CE again. ZECO subsequently learned that Ivy Tech was not offering a course that year, and, receiving no further information about available courses, the Applicants submitted their renewal applications and ZECO remitted a check for the renewal fee for all Applicants. Item 2 on the renewal application, titled "Proof of Completion of Continuing Education," required the Applicants to

> [s]ubmit documentation proving completion of at least 8 hours of continuing education. This continuing education must have been attended and completed within one (1) year before a license renewal. At a minimum this documentation shall include: (1) the date(s) the continuing education was taken; (2) the name of the provider of each course; (3) the name of the instructor for each course; the name of the course(s); and proof that you attended this course. For this continuing education to be accepted, the Department must have approved the continuing education provider(s), the instructor(s) and the curriculum(s).

Appellants' Appendix at 161. On each application, some combination of "Elevator World," "Zeller Elevator Co." and/or "EECO" had been hand-written in the space immediately following the above statement. *See id.* at 161, 166, 169, 172, and 175.[1] No further information was submitted.

---

[1] All applications were submitted after December 31, 2007. The Department did not comment on the date the applications were submitted, and in fact, the Department's representative indicated the Department does not have a particular deadline for applications. *Id.* at 80 ("[I]f they submit everything properly and they have everything in order, we usually give them their renewals").

[5]    By order dated March 3, 2008, the Department denied the renewal applications because proof of completion of the required CE was not submitted with the application as required by Item 2. *See id.* at 159, 164, 167, 170, 173 (each applicant received an identical order). The Applicants were advised that once the documentation was received, renewal of their licenses would be expedited. The Applicants were also advised that if they desired administrative review of the order, they must file a written petition for review with the Commission within eighteen days.

[6]    On March 21, 2008, Zeller sent a letter to the Division advising that "[o]n an annual bases [sic] our employees . . . attend the Association of Reciprocal Safety Councils, Inc. . . ., this is an approximate 4 hour accredited class. . . . We [also] hold weekly one to two hours of training." *Id.* at 162. In addition, the Applicants sought administrative review of the denial of their applications and an administrative law judge ("ALJ") was appointed to hold a hearing. During a prehearing conference, Zeller learned the Department had approved in-house training by other elevator companies for CE hours. At Zeller's request, the Department provided to him "examples of training curricula, instructor credentials, training topics and number of training hours" documentation that had been submitted by other elevator companies and approved for CE by the Department. *Id.* at 176-222. Zeller then provided additional documentation to the Department regarding his in-house training program, but the documentation did not change the Department's position regarding the license renewals.

Zeller represented all Applicants at the hearing. Debra Jackson, the Department representative, testified,

> if somebody wants to provide continuing education, they send me a copy of their program, the classes, the hours, their references, who's teaching them, the credentials of each instructor, an overview of the continuing education. And then I do a review on it, see it [sic] if it meets the qualification of the eight hours that needs to be attended. And then I usually send out . . . a letter of approval.

*Id.* at 76. She also testified it is the Department's position that the statute requires CE to be approved *before* the training is provided. Zeller testified that every Monday morning, ZECO has a one- to two-hour session for its employees where he covers various technical and safety issues. Jackson indicated that if Zeller sent information about a topic to be discussed to the Department in advance, including the credentials of the instructor and the reference materials to be used, such weekly training sessions could be approved to satisfy the CE requirement; however, she noted ZECO submitted no information about proposed in-house training in 2007. Zeller agreed that nothing had been submitted in advance of the weekly training sessions, but maintained he did not know in 2007 that he could do so.

On August 19, 2008, the ALJ issued the following relevant findings of fact:

> 10. The issue in this particular case involves proof of continuing education required by IC 22-15-5-15.

11.  In short, this statute section . . . requires at least 8 hours of continuing education ("CE") where the provider, instructor and curriculum have been approved by the [Department].

\* \* \*

14.  The [2007] applications for renewal from the [Applicants] did not have any reference to CE approved by the [Department]; they only referred to in-house education with no curriculum or proof of attendance.

15.  Zeller submitted both in May, 2008, and at the hearing information about his in-house training plus occasional training from manufacturers he and his employees received.

16.  It is possible that some of Zeller's in-house training could meet the requirements for CE, however unless it was properly submitted to the [Department] as a course in advance, it cannot count.

\* \* \*

21.  Because the renewal applications of the [Applicants] did not comply with the Indiana statute on CE, the decision of the [Department] to deny the renewals should be affirmed.

*Id.* at 36-37 (footnote omitted).  Zeller filed an exception to the ALJ's report, and the Commission issued a final order on October 10, 2008, affirming, without modification, the ALJ's report.[2]

[9]     The Applicants then filed a petition for judicial review in the Posey Circuit Court.  The trial court held a hearing in July 2015 and thereafter issued an order denying the Applicants' petition for judicial review and affirming the Commission's action:

> 31.  An administrative decision is only arbitrary and capricious, and contrary to law and procedure, when it is willful and unreasonable, without consideration or in disregard of facts and circumstances of the case, or without some basis which could lead a reasonable person to the same conclusion.  In the instant case, it is clear from a review of the transcript of the administrative hearing and the ALJ's order that the ALJ considered the facts and circumstances of the case, and conducted a hearing, with [Zeller] in attendance.  Mr. Zeller provided testimony and argument.  After the hearing and consideration of the case, the ALJ prepared findings of fact and issued a decision, which was upheld by the Commission.

> 32.  Indiana law requires individual elevator contractors and elevator mechanics to complete eight hours of CE during the final year of the two-year license period, in order to have their respective licenses renewed.  Ind. Code § 22-15-5-15.  For training to qualify for CE credit, the "continuing education provider, instructor, and the curriculum must have been

---

[2] The Commission's minutes for the meeting at which it considered the Applicants' objection to the ALJ's findings notes the objection had not been timely filed, but the Commission nonetheless discussed and voted on the objections, voting to affirm the ALJ's decision.  *Id.* at 59.

approved by the department." A plain reading of the statue [sic] through the use of the past tense phrase "have been," clearly requires that the approval for the training should come before it can be qualified for CE. A Statute need not encompass any or every potential or unlikely occurrence or interpretation by a potential licensee; such an expectation is unrealistic and not supported by law. The interpretation of the statute by the administrative agency need only have some basis which could lead a reasonable person to the same conclusion.

33. [Applicants] presented no evidence they were treated less fairly or differently than other elevator contractors/mechanics. [Applicants] received exactly the same treatment specified under the relevant statutes and AOPA. The only difference between the [Applicants] and the other licensed contractors or mechanics is the [Applicants] failed to comply with the statutory requirements to renew their licenses. The [Applicants] had the same statutory language and notice as other elevator contractors, who appropriately and successfully submitted their applications for continuing education and recertification.

34. [Applicants] have raised new arguments in their Pre-Hearing Brief to assert the administrative hearing was not in accordance with the law and procedure. The reason behind exhaustion of administrative remedies – judicial economy – is also relevant to the requirement that a party raise an issue to an administrative agency before seeking judicial review. . . . [Applicants'] failure to raise issues at the administrative level constitutes a valid waiver under Indiana law.

35. A review of the Agency record confirms the ALJ's findings: the [Applicants] failed to provide proof of attendance at a Department-approved CE course. The record is clear on the issue, and [Applicants'] arguments are without merit. As a result, the March 3, 2008 denial and the [Commission's] final order upholding the agency's denial are supported by substantial

evidence, are deserving of deference, and are not arbitrary or capricious. [The Commission's] actions were in conformity with the law.

36. [Applicants] fail to meet their heavy burden to show they were prejudiced by an agency decision that was arbitrary, capricious or otherwise contrary to law. This Court does not find that the provisions of Indiana Code § 22-15-5-15 are ambiguous nor are they, by extension, unconstitutional. Thus, the agency action must be affirmed.

*Id.* at 14-16 (some citations omitted). The Applicants now appeal.

# Discussion and Decision

## I. Standard of Review

When we review an administrative agency's decision, we stand in the trial court's shoes. *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 991 (Ind. 2014). We may set aside an agency decision only if the party seeking judicial relief has been prejudiced by an agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). As in the trial court, "[t]he burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity." Ind. Code § 4-21.5-5-14(a).

[11] In conducting our review, we do not reweigh the evidence; rather, we consider the record in the light most favorable to the agency decision. *Regester v. Ind. State Bd. of Nursing,* 703 N.E.2d 147, 151 (Ind. 1998). We defer to an administrative agency's findings of fact if they are supported by substantial evidence, but review an agency's conclusions of law de novo. *Jay Classroom Teachers Ass'n v. Jay School Corp.*, 55 N.E.3d 813, 816 (Ind. 2016). "Although an agency's interpretation of a statute presents a question of law entitled to de novo review, the agency's interpretation is given great weight." *Id.* (citation and internal quotation marks omitted). In construing a statute, the court presumes that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Ind. State Bd. of Registration for Prof'l Eng'rs and Land Surveyors v. Nord*, 600 N.E.2d 124, 128 (Ind. Ct. App. 1992). Words must be given their plain, ordinary and usual meaning, unless a contrary purpose is clearly shown by the statute. *Id.* If the agency's interpretation of a statute is reasonable, we need not consider any other proposed interpretation even if the opposing party has presented an equally reasonable interpretation. *Id.*

# II. Continuing Education Requirement

[12] One of the requirements to renew an existing elevator contractor or elevator mechanic license is to "satisfy the continuing education requirement and submit a proof of completion of training to the [D]epartment." Ind. Code § 22-15-5-15(b). The CE requirement is "at least eight (8) hours of instruction that must be attended and completed within one (1) year before a license renewal." Ind. Code § 22-15-5-15(c). For attendance at a CE course to satisfy a licensee's CE requirement, "the continuing education provider, instructor and the curriculum must have been approved by the [D]epartment." Ind. Code § 22-15-5-15(d).

[13] The Applicants allege the Commission's decision not to renew their licenses was invalid under Indiana Code section 4-21.5-5-14(d) because the licensing statute is not clear that in-house training can meet the CE requirement and the Department did not give ZECO that information; because the Department treated ZECO in a discriminatory fashion with respect to providing information about and approving in-house training; and because the Department's interpretation of the CE statute to require pre-approval of courses for CE credit is incorrect. Essentially, the Applicants contend the Department did not act consistently and fairly in assessing their applications.

[14] The Applicants' arguments conflate two separate issues: whether ZECO could qualify as a CE provider and Zeller as a CE instructor for purposes of holding courses satisfying the CE requirement is a separate consideration from whether the Applicants submitted applications showing they met the requirements for

renewal of their licenses. The agency action being reviewed is the denial of the applications, yet the bulk of the Applicants' argument is directed to the Department's failure to retroactively approve ZECO's in-house training as courses eligible for CE credit.

By appropriate legislation, the State of Indiana has provided for the licensing of those engaged in certain trades, businesses, or professions and has established administrative boards for the purpose of granting or revoking such licenses. *See Ralston v. Ryan*, 217 Ind. 482, 484, 29 N.E.2d 202, 203 (1940) (regarding the licensing of engineers). Those administrative boards "act as fact-finding bodies to ascertain whether applicants conform to a legislative formula by which the right to a license is fixed." *State Bd. of Med. Registration and Examination v. Scherer*, 221 Ind. 92, 96, 46 N.E.2d 602, 603 (1943). Here, the legislature has provided for the Department to "issue a license as an elevator contractor [or] elevator mechanic . . . to a person who qualifies and complies with the provisions of the licensing program." Ind. Code § 22-15-5-6(c). The "legislative formula" for renewing an elevator mechanic's license is to

> (1) Submit to the [D]epartment an application provided by the [D]epartment . . . .
>
> (2) Submit proof of completion of the continuing education required by section [22-15-5-15].
>
> (3) Pay the nonrefundable and nontransferable license fee established under IC 22-12-6-6.

(4) Affirm under penalty of perjury that all information provided to the [D]epartment is true to the best of the applicant's knowledge and belief.

Ind. Code § 22-15-5-12(d).[3] It is undisputed the Applicants did not submit proof of completion of the CE required by statute, either with their applications or when given the opportunity to supplement their applications thereafter. The required "proof" includes information about the date the Department-approved CE was taken; the name of the CE course, provider, and instructor; and proof of attendance. At best, the Applicants provided the name of providers; their documentation does not include dates, names of courses or instructors, or proof of attendance at an approved CE. On its face, then, there is nothing arbitrary or capricious about the Commission's decision to deny the applications for license renewal, as the Applicants failed to conform to the statutory requirements for renewal.

[16] Essentially, however, the Applicants argue they actually *did* complete the required CE because they attended in-house training that should have been retroactively approved by the Department.[4] The Applicants note that despite contacting the Division regarding approved CE options for the renewal period

---

[3] Section 22-15-5-8(b) sets forth the requirements for renewing an elevator contractor's license, which in addition to the requirements for an elevator mechanic's license, includes demonstrating proof of insurance and proof of worker's compensation coverage.

[4] Despite alleging in the letter to the Department that they had attended a four-hour "accredited" course through the Association of Reciprocal Safety Councils, Inc., the Applicants' argument focuses solely on obtaining CE credit for the in-house training.

at issue, they were unable to obtain information about any approved courses. They also note that the statute is not clear that in-house training could satisfy the CE requirement, as Indiana Code section 22-15-5-15(d) provides:

> The continuing education courses designed to ensure the continuing education of an individual holding a license regarding new and existing provisions of the rules of the commission may include:
>
> (1) programs sponsored by the commission;
>
> (2) trade association seminars;
>
> (3) labor training programs; or
>
> (4) joint labor management apprenticeship and journeyman upgrade training programs.

Moreover, they note the Division never informed them that in-house training could be CE-approved, despite approving other elevator companies' in-house training for CE. Finally, they argue the Department's interpretation of the statute defining the CE requirement is unreasonable because the statute does not explicitly state CE must be *pre*-approved for it to satisfy the requirement.

[17] With regard to the difficulty the Applicants claim they had in obtaining information about available CE, Zeller testified at the hearing before the ALJ based upon shorthand notes written by his secretary that she had called the Division on possibly two occasions at the end of September 2007 to inquire whether Ivy Tech was again providing a CE course. He testified his secretary

also recorded making several phone calls to Ivy Tech in October and November 2007, including one on November 21, 2007, in which Ivy Tech informed her it would not be providing a CE course, but gave her the names and numbers of other organizations to call. Rather than contact any of those organizations or call the Division again for further guidance, Zeller told his secretary on November 28, 2007, to send a check to the State for the license renewal fees, followed thereafter by the applications. The Division may not have done all it could to communicate with current license holders about available CE options,[5] especially given the licensing program was still relatively new, but the Division itself is not responsible for offering CE programs, only approving them to be offered by others. The onus to obtain CE rests with the Applicants, and they certainly did not do all they could, either. They made at most two phone calls to the Division, seeking information about an Ivy Tech course. They explored no alternatives beyond Ivy Tech. It is true the statute describing CE courses does not specifically include in-house training among the types of courses that may meet the CE requirement. However, the statute is also clear that the list is not exclusive, as it states such courses "*may include*" those listed. Ind. Code § 22-15-5-15(d). The Applicants could have inquired of the Division whether ZECO's weekly in-house training could count as CE, but instead, once the

---

[5] Throughout their briefing, the Applicants argue the Department "was under a specific, statutory duty" to tell them they could provide in-house training, citing Indiana Code section 5-14-3-1. *See* Appellants' Reply Brief at 4. That statute is part of Indiana's Access to Public Records Act, which allows any person to inspect and copy the records of any public agency. *Knightstown Banner, LLC v. Town of Knightstown*, 838 N.E.2d 1127, 1130 (Ind. Ct. App. 2005), *trans. denied*. It does not impose on the Department the obligation the Applicants seek to impose.

Applicants ascertained a course similar to the one provided two years prior was not going to be provided again, they asked no further questions and simply submitted their applications without regard to the plainly stated requirement to submit proof of approved CE attendance.

[18] As to ZECO's assertion it was treated differently than other elevator companies who were approved for in-house CE training, we note that again, this goes to the question of whether ZECO could be a CE provider rather than to the question of whether the renewal applications should have been denied. Regardless, the record contains no evidence of discriminatory treatment. It is true other elevator companies' in-house training was approved for CE credit. But there is absolutely no evidence that the Department proactively gave those companies information about the option to provide in-house training that it did not provide to ZECO, as the Applicants seem to allege. Moreover, those other companies submitted the appropriate documentation to have their in-house CE approved prior to offering it, and, presumably, their employees then submitted the appropriate documentation of their attendance with their renewal applications. ZECO did not submit any documentation seeking to have its in-house training approved until after the Applicants' licenses had expired and their renewal applications were denied. Therefore, ZECO was not treated differently than other elevator companies because it was not in the same position as the other companies.

[19] This leads to the Applicants' final allegation that the Department's interpretation of the CE statute to require a CE course to be pre-approved is

"unavailing." Appellants' Brief at 19. The CE statute states that in order for an individual's completion of a CE course to satisfy an applicant's CE requirement, "the continuing education provider, instructor and the curriculum *must have been approved* by the [D]epartment." Ind. Code § 22-15-5-15(d) (emphasis added).

[20] The Applicants analogize their CE requirements with an attorney's continuing legal education requirements, citing the Mandatory Continuing Legal Education Guideline that an attorney "may apply for credit of a course either before or after the date on which it is offered." Guidelines to the Ind. Admission and Discipline Rule, Section 3(d). The Applicants contend "there is no just reason why elevator licensees, like attorneys . . ., may not submit proof of their CE training after it occurs and receive approval from the Department at that time." Appellants' Brief at 20. But there are several reasons why the two do not necessarily have to be treated the same. First, the attorney licensing and education scheme was created by the Indiana Supreme Court and is overseen by a court-created commission, whereas the elevator contractor and mechanic licensing and education scheme was created by the Indiana General Assembly and is overseen by a legislatively-created agency. Second, the continuing legal education rules for attorneys specifically provide in certain cases for approval after a course is completed, whereas section 22-15-5-15(d) does not. Third, Mandatory Continuing Legal Education Guideline 3(d) states in its entirety that an attorney may apply for credit either before or after the course "*[e]xcept for distance education and in-house courses*"; for a law firm's *in-house course* to be

approved for continuing legal education credit, an application for accreditation must be received at least thirty (30) days *prior* to the course. So if the two continuing education schemes were to be treated the same as the Applicants wish, in-house elevator training would require pre-approval notwithstanding the specific language of section 22-15-5-15. And fourth, regardless of the appropriate timing of approving a CE course and even if the documentation ZECO submitted after the fact would be sufficient for it to be approved as a provider and Zeller as an instructor, the Applicants provided no documentation at any time proving their attendance at any given training session.

[21] Turning to the language of the statute specifically applicable to this situation, Indiana Code section 22-15-5-15 does not say that for an individual's completion of a course to satisfy the CE requirement the course "must *be* approved" by the Department; rather, it says the course "must *have been* approved." Because the obligation imposed by the statute is written in the past tense, it necessarily means the required Department action—approval of a course—is to be taken *before* the individual's completion of the course may satisfy the CE requirement. *Cf. In re P.F.*, 849 N.E.2d 1220, 1225 (Ind. Ct. App. 2006) (reviewing a statute regarding school expulsion that requires the governing body to hear a student's appeal unless the school board "has voted" not to hear appeals of expulsions and noting that because "has voted" is in the past tense, the school board is required to hear a student's appeal unless it had *already* taken a vote not to hear any such appeals prior to the initiation of that individual's appeal). In addition, to the extent the language of the statute is

ambiguous, the Department's representative testified at the ALJ hearing that the Department interprets section 22-15-5-15 to mean a course must be approved before the training is provided. We recognize an agency has expertise in its field and therefore give great weight to an agency's interpretation of a statute it is responsible for enforcing. *Andy Mohr West v. Office of Ind. Sec'y of State*, 54 N.E.3d 349, 352-53 (Ind. 2016). If the agency's interpretation of a statute is reasonable, we end our analysis there. *Id.* And indeed, the Department's interpretation of the statute here is reasonable.

[22] In sum, ZECO did not do what was necessary to offer approved CE to its employees and the Applicants did not prove they had otherwise attended eight hours of approved CE. "An administrative decision is arbitrary and capricious only when it is willful and unreasonable, without consideration or in disregard of the facts and circumstances of the case, or without some basis which could lead a reasonable person to the same conclusion." *Ind. Horse Racing Comm'n v. Martin*, 990 N.E.2d 498, 503 (Ind. Ct. App. 2013). Because the Applicants failed to prove they had met all the requirements for renewal of their licenses, and have failed to show the Department or the Commission acted unreasonably, in disregard of the facts and circumstances, or without a reasonable basis in denying the applications on this ground, they have also failed to meet their burden of showing the agency action in this case was invalid.

# III. ALJ Hearing

[23]   Finally, the Applicants contend the ALJ acted improperly by deferring to the Department's position and not conducting a true *de novo* review.

> The ALJ is guided in his role by Ind. Code §§ 4-21.5-3-1 through 4-21.5-3-37 which establish the procedure the ALJ is to follow. More particularly, Ind.Code § 4-21.5-3-27 requires the ALJ to make findings of fact based on the evidence presented *at the hearing.* This requires the ALJ to independently weigh the evidence presented at the hearing and to base recommendations exclusively on that record.

*Ind. Dep't of Nat. Res. v. United Refuse Co. Inc.*, 615 N.E.2d 100, 104 (Ind. 1993).

[24]   The trial court found this issue waived for failure to raise it to the Commission, noting the Applicants raised this new argument for the first time in their pre-hearing brief on judicial review. In general, "[a] person may file a petition for judicial review . . . only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." Ind. Code § 4-21.5-5-4(a). In *United Refuse*, our supreme court determined the ALJ did not perform a *de novo* review and remanded the case for a new ALJ hearing conducted under the appropriate standard of review. 615 N.E.2d at 104. In a concurring opinion, Justice DeBruler noted the objections to the ALJ's nonfinal order were based in part on the review standard employed by the ALJ and the ultimate authority had the ability to reject or modify the ALJ's findings and make its own. *Id.* at 105 (citing Ind. Code § 4-21.5-3-28(g)(2)). That the ultimate

authority affirmed the ALJ's findings without modification under those circumstances justified setting aside the agency action. *Id.* Here, the propriety of the ALJ's decision on this particular basis could have been raised for the Commission to correct but was not. *See* App. at 61 (ZECO's "exception" to the ALJ's order, raising only alleged omissions from certain findings of fact).

[25] Regardless, we see nothing improper about the ALJ's role in this case. With respect to the ultimate issue before the ALJ—whether the applications met the statutory requirements—the ALJ determined from the evidence presented at the hearing that the applications did not meet the statutory requirements because they failed to include proof of attendance at eight hours of approved CE. This is an appropriate review and resolution of the case.

# Conclusion

[26] The Applicants have not established that the Commission's decision was unsupported by substantial evidence or was arbitrary, capricious, or in violation of any constitutional, statutory, or legal principles. Accordingly, the trial court's decision affirming the Commission's order denying the Applicants' license renewals was not in error. The judgment of the trial court is affirmed.

[27] Affirmed.

Najam, J., and Crone, J., concur.